JIM BOB WEATHERFORD V. STATE.

No. 26,700.  December 16, 1953.

*L. H. Welch,* Breckenridge, for appellant.

*Wesley Dice,* State's Attorney, Austin, for the state.

GRAVES, Presiding Judge.

Appellant was charged by indictment in two counts with the misdemeanor offense of aggravated assault upon one, Rafe Cloe, the first count of said indictment being under Article 1147, sec. 7, P.C., which declares an aggravated assault to have been committed when a serious bodily injury is inflicted upon the person assaulted; and the second count of said indictment being under Article 1147, sec. 9, P.C., which provides for such assault to be committed with premeditated design and by the use of means calculated to inflict great bodily injury. Upon a trial before a jury the appellant was found guilty and awarded a penalty of $100.00 fine and six months' confinement in the county jail.

The facts show that the assaulted party was a boy 17 years of age and that appellant was 19 years of age at the time of the assault but was 20 years old at the time of the trial. The injured party was a school boy in the schools of Breckenridge, Texas, and was in attendance upon some school celebration on the night of the assault. There had been previous trouble between him and the appellant relative to some prank, such as letting out the air of the tires of the injured party's car which prank the appellant denied having committed. On the night in question, the injured boy and his friend, Joe Latham, approached his car and the appellant and his companions were nearby. According to the state's testimony, a few words passed between the parties and appellant threatened to give the complaining witness a whipping. While this matter was being discussed, appellant struck the witness on the jaw with his right fist and knocked him to the ground. When the prosecuting witness recovered he found his mouth in a peculiar condition and blood was coming therefrom. As soon as he reached a doctor it was evidenced that his jaw was broken; that one side of it was shattered and the other side was cracked; that Cloe was unable to utilize his jaw satisfactorily. Cloe was thereafter taken to a hospital in Breckenridge where the doctor ascertained that this was a serious matter, and the services of an expert were obtained in Abilene, Texas,

where the complaining witness was placed in a hospital there and where he remained for approximately a week while his jaw and teeth were wired together and his mouth remained closed for some period of time.

The doctor testified that Cloe's jaw was deviated, that is, knocked to the right about three-fourths of an inch which indicated a broken jaw, and this was made apparent by an X-ray inspection. There was a moderate amount of pain at such time as well as bleeding behind the gums. The doctor gave him an opiate and a barbiturate to relieve the pain. His teeth had to be tied together in an open operation, and the bony fragments were brought together and fixed in place. While the teeth were wired together, the prosecuting witness was not able to open his mouth and this left him in a dangerous situation. His jaw was subject to re-injury for many months because it would take a long time for it to heal. The result of this operation has been good but not perfect. The jaw was not as good as it was originally so the closing of his mouth was not so good. The doctor testified further that a fracture is harder than anything else to realign perfectly, and that the boy may have good results finally on account of his age, but that he will have pains in his face for about a year thereafter; that it might be comfortable for many years and then later on it will revive and he will have some degree of arthritis resulting from the break.

The testimony also shows that this injured boy had had an injury some two years prior to the present one and that he sometimes went about on crutches. It was also shown that prior to the time that he was struck by the appellant, he (appellant) made the statement to others, as well as to Cloe, that he was going to give him a whipping. It is claimed by the state that the appellant, in company with others, came up to the injured party just before he struck him and told him he was going to give him a whipping; that he struck Cloe and knocked him down, and then said, "Get up and let's finish the fight;" that Cloe made no effort to strike the appellant.

Appellant presents many objections to the court's charge which are set forth in ten bills of exception. Among other things, he requested the court to charge on both phases of the indictment in the same instrument, which the court did not do, but did charge upon each phase of the indictment in separate paragraphs of his charge. It seems that the court gave a fair definition of the law relative to such phases.

Appellant also requested the court to give him a special charge on what is termed in the statute as "serious bodily injury." Neither in such request nor in the record does it appear that appellant presented to the court a properly drawn charge on serious bodily injury as set forth in Article 1147, sec. 7, P.C., and also relative to the phrase "great bodily injury" as set forth in sec. 9 of said Article 1147, P.C., supra.

Appellant excepted to the court's main charge in that the same does not define what is meant by the term "premeditated design" as set forth in the indictment, and also in the court's general charge. It is further noted that no definition of "premeditated design" is found in any of the special charges presented to the trial court.

In Chapter 172, p. 486, Acts of the 53rd Legislature, Regular Session, it is provided that "in no event shall it be necessary for the defendant or his counsel to present special requested charges to preserve or maintain any error assigned to the charge, as herein provided." (Art. 659, Vernon's Ann. C.C.P.). However, this act did not take effect until May 19, 1953, whereas it is worthy of note herein that this case was tried on May 6, 1953. Therefore, it would not come under the provisions of the act in question; but this cause was governed by our rule that in a misdemeanor case a proper charge should have been submitted to the trial court.

We withhold any discussion herein on the proposition as to whether or not it would be necessary to define such commonly used and accepted terms in the trial court's charge on account of the fact that no proper charge was submitted by the appellant in this proceeding, and we are relegated to the rule existing prior to the passage of Chapter 172, Acts of the 53rd Legislature, supra.

There are twenty-four informal bills of exception in the statement of facts, all of which have been examined and are deemed to be without merit. We can only say that the careful trial judge seems to have been fair in his rulings relative to all the exceptions found in the record.

Being impressed with the fact that this cause has been properly tried, the judgment of the trial court will be affirmed.