Edward William **QUILICE**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04-81-00011-CR.

Court of Appeals of Texas,
San Antonio.

Nov. 18, 1981.

Rehearing Denied Dec. 9, 1981.

Donald A. Roush, Jr., San Antonio, for appellant.

Bill M. White, Dist. Atty., Douglas V. McNeel, Asst. Criminal Dist. Atty., San Antonio, for appellee.

## OPINION

Before ESQUIVEL, BUTTS and CANTU, JJ.

BUTTS, Justice.

This is an appeal from a conviction for the offense of possession of heroin. After having been found guilty, appellant tried the issue of punishment to the court. The court found the enhancement paragraph not true, and assessed a punishment of ten (10) years' confinement. The sufficiency of the evidence is not challenged. A brief

discussion of the facts is necessary, however, for a proper disposition of appellant's grounds of error.

The record reflects that San Antonio police detective Clyde Gentle received a phone call from an undisclosed informant on August 24, 1977. He was told that a white male, approximately thirty years old, six foot one to two, with light brown hair and a mustache, wearing a tan long sleeved shirt, and driving a maroon Pontiac with a tan top bearing California license plates was in possession of a quantity of heroin. He was informed that the suspect was located at South Leona Street in San Antonio and that he would be leaving the location in the very near future. Gentle and two other police officers drove to the location. They saw a man matching the informant's description getting into a car also matching the informant's description. He was subsequently followed and stopped, and the automobile was searched. Several balloons were found in the automobile. Five of the balloons were chemically tested and were found to contain heroin.

In his first ground of error, appellant asserts that the trial court erred in failing to require the State to disclose the identity of the informant. The rule is well established that unless the informant participated in the offense, was present at the time of the offense, or was otherwise shown to be a material witness to the transaction or as to whether the defendant knowingly committed the act charged, his identity need not be disclosed. *Rodriguez v. State,* 614 S.W.2d 448, 449 (Tex.Cr.App.1981); *Etchieson v. State,* 574 S.W.2d 753, 757 (Tex. Cr.App.1978); *Varela v. State,* 561 S.W.2d 186, 188 (Tex.Cr.App.1978); *Hardeman v. State,* 552 S.W.2d 433, 439 (Tex.Cr.App. 1977); *Carmouche v. State,* 540 S.W.2d 701, 703 (Tex.Cr.App.1977); *See also, Roviaro v. U. S.,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

■ In the instant case, none of these elements were present. There was no showing that the informant was present at the time the appellant was stopped and arrested, nor that the informant was a participant in the offense. The appellant was in possession of the heroin when the police officers stopped him. The trial court's refusal to order the prosecution to disclose the name of the informant was not error. The ground of error is overruled.

In his second ground of error, appellant complains that the trial court committed reversible error in denying his motion to suppress, and in allowing the introduction of evidence seized pursuant to an illegal warrantless search and seizure not based on probable cause. We disagree.

■ The question of whether a warrantless search is constitutionally valid can only be decided in terms of the concrete factual situation presented by each individual case. *Nastu v. State,* 589 S.W.2d 434, 438 (Tex.Cr.App.1979); *Rivas v. State,* 506 S.W.2d 233, 235 (Tex.Cr.App.1974). In order for a warrantless arrest or search to be justified, the State must show the existence of probable cause at the time the arrest or search was made, as well as the circumstances which made the procuring of a warrant impracticable. *Brown v. State,* 481 S.W.2d 106, 109 (Tex.Cr.App.1972). Probable cause for a search exists where the facts and circumstances within the knowledge of the officer on the scene and of which he has reasonably trustworthy information would lead a man of reasonable caution and prudence to believe that he will find evidence pertaining to a crime. *Britton v. State,* 578 S.W.2d 685, 689 (Tex.Cr. App.1978); *Brown, supra,* 481 S.W.2d, at 110. The requirement of "reasonably trustworthy information" is satisfied when there are underlying circumstances from which the officer could conclude that the undisclosed informant providing the information was credible or his information reliable. *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964). This standard is met when the officer affirms that he has received information from the undisclosed informant on previous occasions and that such information has proved to be true and correct. *Carmichael v. State,* 607 S.W.2d 536, 538 (Tex.Cr.App.1980); *Gonzales v. State,* 577 S.W.2d 226, 230 (Tex.Cr.

App.1979). In assessing the sufficiency of the probable cause to search a suspect, the court may also consider the accuracy of the information supplied by the informant as verified by the officer, as well as the specificity of that information. *Draper v. U. S.,* 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959). In the instant case, Gentle testified at the suppression hearing that he received a phone call from an undisclosed informant who described in detail the appellant and the car he would be driving, as well as the fact that the appellant had heroin in his possession and would be leaving the location soon. He further testified that the informant knew that the police wanted information based only upon the personal observation by the informant of the subject in possession of heroin, that the informant had provided Gentle with reliable and credible information concerning narcotic traffic in the past, and that several other heroin possession cases had been made in the past on the basis of information provided by the informant.

Gentle also testified that it was his experience that it takes him at least 45 minutes to type up a search warrant and affidavit and obtain a judge's signature on it. In light of that fact and the fact that the suspect would be leaving a known location at any time, Gentle had not sought to obtain a search warrant prior to the search of appellant.

Since the record indicates that the undisclosed informant had proven reliable in the past and the information provided by him proved to be accurate and sufficiently specific, we find a sufficient showing of probable cause to warrant the search of the appellant and the area within his care, custody and control. *Rangel v. State,* 444 S.W.2d 924 (Tex.Cr.App.1969). Since probable cause did exist and the record indicates that it was impracticable to obtain a search warrant under the circumstances, there were exigent circumstances to alleviate the necessity to obtain a search warrant. We find that the arresting officers were entitled to search the appellant without a warrant and that the evidence obtained as a result of that search was admissible at appellant's trial. Appellant's second ground of error is overruled.

Appellant next asserts that the trial court erred in failing to grant a mistrial after a witness stated that he had become acquainted in the past with a particular address in his capacity as a narcotics detective. The trial court sustained appellant's objection to the elicited testimony and the prosecutor proceeded to elicit the same testimony again. Appellant again objected, and the court sustained the objection and instructed the jury to "disregard the last question of the State's attorney and disregard the answer that was given by the witness."

This court will not reverse a conviction solely because an improper question was propounded. To cause reversal the question must be obviously harmful. *Walker v. State,* 513 S.W.2d 39, 42 (Tex.Cr.App. 1974); *Hartman v. State,* 507 S.W.2d 553 (Tex.Cr.App.1974). Generally an error in asking an improper question may be cured or rendered harmless by a withdrawal of such testimony and an instruction to disregard the same, except in extreme cases where it appears that the question is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the opinions produced on their minds. *Walker, supra,* 513 S.W.2d, at 42. While the questioning in the present case was improper and in violation of the court's order, nevertheless, in view of the trial court's ruling and its instructions to the jury, we find no reversible error. The third ground of error is overruled.

Appellant's fourth ground of error complains that the trial court committed reversible error in denying his motion for mistrial when a witness testified that another officer had described the balloons as appearing to be covered with saliva, as such testimony was so prejudicial that the court's instruction to disregard could not cure the harm to the appellant. Appellant's brief offers no citation of authority and is a general allegation. Therefore, we consider it to be without merit and overrule it.

Appellant has filed a pro se brief in which some of his grounds of error duplicate those raised by counsel. We have reviewed all of his contentions and find them to be without merit. The judgment is affirmed.

CANTU, Justice, dissenting.

I cannot agree with the majority opinion that the information supplied by the undisclosed informant constituted sufficient facts upon which a neutral and detached magistrate could base a conclusion that probable cause to search existed.

At the pre-trial hearing on appellant's motion to suppress, San Antonio police officer Clyde Gentle testified that he received a telephone call at approximately 10:30 a.m. on August 24, 1977. The call was from an informant, who was never identified by name but from whom Gentle testified he had received information several times in the past which had proven to be reliable, credible and accurate.

The information received on the morning of August 24, was that there was a subject at 915 South Leona Street described as a white male, approximately thirty years old, six feet one to two, with light-colored brown hair and a mustache, wearing a tan long-sleeved shirt. The informant further stated to Gentle that the subject would be driving a maroon-colored Pontiac with a tan top, license plate number 582 SSM, and that he would be in possession of a quantity of heroin and would be leaving the location at any minute.

Because of the exigency of the circumstances, Gentle testified that he did not have time to procure a warrant. It had been his experience that it took approximately 45 minutes to obtain a warrant. Gentle recruited Detective De La Garza and Sergeant Otis Doyle and immediately proceeded to the location indicated by the informant.

While driving past the location they identified the car described by the informant which was parked in front of the house at 915 S. Leona. They proceeded to an area on Colima Street close to the location of 915 S. Leona and set up a point of surveillance.

De La Garza, on foot, went in an alley between two houses where he could see directly to 915 S. Leona. Gentle and Doyle remained in the unmarked detective vehicle which they had parked at such a location that they were unable to observe the scene. De La Garza testified that there were several men standing near the suspect's vehicle but that there was nothing suspicious in the area which would lead him to believe that any illegal activity was occurring.

Approximately seven or eight minutes were spent at the scene without suspicious activity being noticed when De La Garza motioned that the suspect was coming out of the house. De La Garza then turned and ran to the detective's vehicle. The three officers observed the suspect's vehicle come to the corner of Leona and Colima Streets, make a u-turn and proceed north on Leona Street. This was the first time Gentle and Doyle had seen the suspect. The officers at this point began to follow the suspect's car which turned west on Guadalupe Street, north on Frio Street and east on El Paso Street.

Thinking that the suspect would circle the block and proceed back the opposite way, the officers turned on Frio Street and started back towards Guadalupe Street. During this time, the suspect's car was not within sight of the officers. The suspect was intercepted at the intersection of Guadalupe Street and Frio Street.

Gentle testified that the sole basis for stopping the suspect was the informant's information. There had been no violation of any traffic regulations and nothing resembling criminal activity had been seen.

The officers were walking towards the vehicle when Gentle yelled out "He is swallowing it," at which time De La Garza went immediately to the suspect and grabbed him by the throat. A struggle ensued between the officers and the suspect. The suspect's head went down between the console and the passenger's side of the vehicle. The suspect was subdued and taken out of the car, placed under arrest and advised of his rights. Doyle found some balloons on the console side of the seat.

The car was impounded and inventoried by De La Garza and a total of five balloons was found in the car. The balloons contained a powder which was later identified as heroin.

During the hearing on the motion to suppress, defense counsel attempted to learn the name of the informer. The State objected to this line of inquiry and the court sustained. Gentle testified that the informant had not been present at the time of the surveillance or the subsequent arrest. Several things about the suppression hearing deserve special mention to paint a proper scenario.

At no time on direct examination did the prosecutor inquire of Gentle regarding the reliability of the source of his information. In fact, it is apparent that the prosecutor intentionally avoided inquiry into this area.

On cross-examination defense counsel delved into the source of the information received from the informant and Gentle answered that he *knew* the informant to be speaking from personal observation. Further cross-examination disclosed that Gentle *supposed* the information to be from first-hand observation because that was the way he (Gentle) had insisted the information be gathered.

After the remaining officers had testified to related matters, the State recalled Gentle to the stand for very limited examination.[1]

It was at this juncture that Gentle admitted for the first time that he had no idea how his informant had obtained the information given him. Gentle admitted that the only personal knowledge he possessed regarding the pre-search and arrest was that the location at 915 South Leona was a heroin connection.

Almost without exception, but without objection, all of the testimony of Gentle which we must examine in evaluating the existence or nonexistence of probable cause is before us in the form of affirmative and negative responses to leading questions.

Nevertheless, the determination must be made from the evidence as presented to the examining court.

The trial court overruled the motion to suppress and allowed the introduction of the evidence which was seized during the search. Appellant was convicted of possession of heroin and sentenced to ten (10) years' confinement in the Texas Department of Corrections. Appellant's ground of error raises the issue of the validity of his arrest and the admissibility of the "fruit" of that arrest in evidence at this trial.

The purpose of the Fourth Amendment, as well as of the corresponding State constitutional provision, (see Art. I, § 9, Texas Constitution), is protection of innocent and guilty alike from arrest or search based upon suspicion or upon common rumor and report rather than upon proof of reasonable grounds for believing a crime has been or is being committed, either through direct evidence or through reasonable inferences from suspicious acts. *See Wilson v. State*, 621 S.W.2d 799 (Tex.Cr.App.), opinion delivered Sept. 30, 1981.

In *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the United States Supreme Court established a two-pronged test to be applied as a prelude to issuing an arrest or search warrant. It is axiomatic in our law that the standards applicable to the factual basis supporting an officer's probable cause assessment at the time of a challenged warrantless arrest and search are at least as stringent as the standards *Aguilar* sets forth with respect to a magistrate's assessment in issuing an arrest or search warrant. *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). Because the probable cause assessment of this case is based upon information received from an informant, I therefore assess the probable cause by applying the same standards used by a magistrate in determining probable cause for the issuance of an arrest or search warrant. *Colston v. State*, 511 S.W.2d 10 (Tex.Cr.App.1974).

---

1. Defense counsel urged the court to recall Gentle and the prosecutor, noting that he had

not yet rested his case, volunteered to recall the officer as the State's witness.

The Supreme Court, in *Aguilar*, held that an affidavit for a search warrant may be based on hearsay information and need not reflect the direct observations of the affiant; however, the magistrate must be informed of some of the underlying circumstances on which the informant based his conclusions and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, was "credible" or his information "reliable." 378 U.S., at 114, 84 S.Ct. at 1514. The court, in holding that the evidence obtained as a result of the search warrant in *Aguilar* was inadmissible, stated:

> Here the 'mere conclusion' that petitioner possessed narcotics was not even that of the affiant himself; it was that of an unidentified informant. The affidavit here not only 'contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein,' it does not even contain an 'affirmative allegation' that the affiant's unidentified source 'spoke with personal knowledge.' For all that appears, the source here merely suspected, believed or concluded that there were narcotics in petitioner's possession.

378 U.S., at 113, 84 S.Ct. at 1513.

Thus, the two-pronged test of *Aguilar* requires: (1) disclosure of underlying circumstances on which the informant based his conclusions or knowledge, and (2) disclosure of the underlying circumstances from which the officer concluded that the informant was credible or that his information was reliable. 378 U.S., at 114, 84 S.Ct. at 1514.

In dealing with the first ("basis of knowledge") prong of the *Aguilar* test, the evidence adduced at the pre-trial hearing on the motion to suppress illustrated that the informant had given Officer Gentle a description of an unknown suspect, a description of the car he would be driving and had stated that he would have heroin in his possession.

In *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the Supreme Court indicated that the purpose of the Aguilar "basis of knowledge test" could be fulfilled without a statement of the circumstances from which the informant derived his information and that in absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's *criminal activity* in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation. 393 U.S., at 416, 89 S.Ct. at 589.

What is remarkable about the instant case is that unlike other cases where there is no mention of how the information was obtained, we have here a positive admission from the officer that he has no idea how his informant obtained his information.

If we are to presume sufficient underlying circumstances from the sketchy information supplied we would in effect have to disregard the clear language in *Spinelli*.

The assertion was made in *Spinelli* that a tip may be so detailed as to be "self-verifying," on the ground that extensive detail may imply that the informant has based his conclusion on personal observation. 393 U.S., at 416, 417, 89 S.Ct. at 589, 590.

What details were supplied to Gentle indicating criminal activity? What evidence of criminal activity was corroborated through independent investigation or surveillance?

The answer has to be an unqualified "none."

Details of an unknown person's appearance together with a particular car's description are totally consistent with innocent facts. We need not even contrast innocent conduct versus criminal activity since neither the information supplied nor facts gained from surveillance reveal anything but innocent conduct.

If we are to rely on any single fact supplied by the informant, we must do so on the conclusory allegation that appellant was going to be in possession of heroin. But the

test requiring underlying circumstances was designed specifically to test such conclusory allegations and affidavits containing nothing more were condemned as unacceptable in *Spinelli*, 393 U.S., at 424, 89 S.Ct. at 593.

In *Spinelli* the affidavit contained allegations that surveillance had been in effect for five days and reflected detailed movements of the accused. It further reflected numerous instances of independent investigation in addition to revealing that the accused was personally known to the affiant as a gambler, bookmaker and associate of gamblers and bookmakers. The affidavit finally concluded that Spinelli was engaging in wagering operations and using the phones previously investigated.

As in our case, all of the information supplied, except the conclusory one charging the violation, was consistent with innocent conduct. The conclusory allegation with nothing more has been held insufficient to establish probable cause. *Aguilar v. Texas*, 378 U.S., at 113, 84 S.Ct. at 1513.

Had the informant in the instant case given detailed accounts of the premises, persons located therein, names, source of the heroin, prior dealings, or any other fact which would have aided the examining court in concluding that such facts could only have been obtained by someone intimately connected with the transaction, then perhaps the test in *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), would suffice.

The Court of Criminal Appeals has consistently required more than the instant case supplies.

In *Gomez v. State*, 470 S.W.2d 871 (Tex. Cr.App.1971), the informant was only a few blocks away from the vicinity described and further described persons by name and detailed what they were doing. The court correctly concluded that "... there would appear to be some indication that the informant spoke with personal knowledge or had gained his information in a reliable way."

In *Anderson v. State*, 467 S.W.2d 434 (Tex.Cr.App.1971), both the informant and the officer knew the defendant as a user of narcotics. The informant's tip that the defendant was selling marijuana at a particular location, together with independent surveillance of an event consistent with the tip, was held to supply the requisite probable cause.

In *Rivas v. State*, 506 S.W.2d 233, 234 (Tex.Cr.App.1974), the informant supplied extreme details of cars, names and events which, with corresponding investigation and corroboration, were held to be sufficient. But the corroboration included independent observation of packages shaped like "kilos" of marijuana.

In *Buitron v. State*, 519 S.W.2d 467 (Tex. Cr.App.1975), the informant overheard the defendant say he was going to deliver a large quantity of marijuana to be transported in a pickup truck with a camper shell. Independent investigation and corroboration of the criminal activity supplied the requisite probable cause.

In *Powell v. State*, 502 S.W.2d 705 (Tex. Cr.App.1973), the informant's tip was corroborated through independent observation of acts consistent with a drug transaction.

The instant case is practically indistinguishable from *Brunson v. State*, 506 S.W.2d 594 (Tex.Cr.App.1974), where the Court of Criminal Appeals, speaking through Judge Douglas, was called upon to declare whether an informant's statement that he had reason to believe that heroin was being possessed, together with other detailed facts, was sufficient to supply the requisite probable cause. The court held it was not.

In the instant case, the affiant's statement that he believed the informant to be speaking from personal knowledge because he had trained him in a manner of obtaining information, together with the admission that he had no knowledge of how his informant had obtained the information, can only be interpreted as a "reason to believe" the information to be true. Mere affirmance of belief or suspicion is not enough. *Aguilar, supra*, 378 U.S. at 112, 84 S.Ct. at 1512. The only significant difference between *Brunson* and the instant case

is that in *Brunson* the *informant's* information is questionable because of the lack of verifiable means and in the instant case the *affiant's* testimony is questionable for the same reason. The results should be the same. *See also State v. Robey*, 577 P.2d 1226 (Mont.1978).

I feel that the tip in the instant case does not contain a sufficient statement of the underlying circumstances from which a hearing court may conclude that appellant was involved in illegal activity. *See Bazan v. State*, 522 S.W.2d 224 (Tex.Cr.App.1975).

In *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), the Supreme Court allowed the basis of knowledge prong of *Aguilar* to be met where there was personal observation and *corroboration* by the investigating officers. However, in the case at bar, I feel that there was not sufficient corroboration of the informant's tip. The officers set up a surveillance which lasted only seven to eight minutes. They observed nothing suspicious at the scene. They were merely able to corroborate innocent factual data received from the informant (description of the suspect and his car). There was nothing at the scene to indicate that illegal activity was occurring.

Article 14.04, Tex.Code Crim.Pro., provides:

> Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

I fail to see how the information supplied by the informant was "satisfactory proof ... that a felony has been committed ..." as required by Article 14.04, Tex.Code Crim. Pro.

Since there was insufficient evidence informing Officer Gentle as to the underlying circumstances upon which the informant based his conclusions that appellant was going to be in possession of heroin, there was no probable cause for the search.

*Aguilar v. Texas, supra.* The information failed to adequately describe the appellant's criminal activity in sufficient detail to allow Gentle to conclude that the informant was relying on substantial information. *Spinelli v. United States, supra.* Furthermore, there was insufficient corroboration by the officers to produce probable cause to search appellant. *United States v. Ventresca, supra.*

Therefore, I would hold that the *Aguilar* test has not been met and that there was insufficient probable cause for the search. Thus, the search was illegal and the fruits of such a search cannot be admitted into evidence. *Armstrong v. State*, 550 S.W.2d 25 (Tex.Cr.App.1976).

The judgment should be reversed and the cause remanded. I dissent.